617 So.2d 291 (1993)
Milo A. ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. 76377.
Supreme Court of Florida.
March 11, 1993.
Rehearing Denied May 10, 1993.
*292 Larry Helm Spalding, Capital Collateral Representative; Martin J. McClain, Chief Asst. CCR and Kenneth D. Driggs, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Milo A. Rose, a prisoner under sentence of death, appeals the circuit court's denial of his motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Rose was convicted and sentenced to death for the 1982 murder of Robert C. Richardson. This Court affirmed the conviction and sentence on direct appeal. Rose v. State, 472 So.2d 1155 (Fla. 1985). The pertinent facts of the murder are set forth in that opinion:
At approximately 10 p.m. on October 18, 1982, several witnesses were talking together outside one of their residences. Testimony at trial revealed that they saw two men walking down the street. Subsequently they heard the sound of breaking glass and saw that one of the men, later identified as Robert C. Richardson, was lying on the ground. The other man, identified by witnesses as Milo Rose, appellant, was standing over him. Evidence shows that appellant then walked to a nearby vacant lot, picked up a concrete block, and returned to the man on the ground. Appellant raised the block over his head and hurled it down on Richardson's head. He picked up the block and hurled it down a total of five or six times. The area where the incident occurred was well lighted, so the witnesses were able to see the man with the concrete block clearly.

*293 Appellant was living with Mrs. Richardson, the victim's mother, at the time. Two other acquaintances were staying with them. On the night of the incident, these two acquaintances left an apartment which was in the vicinity where the killing occurred and found appellant hitchhiking on a nearby street. Appellant got into their truck and stated several times that he had just killed Richardson. Appellant was later found in Mrs. Richardson's house and was arrested.
Id. at 1156-57.
Rose filed the instant motion for postconviction relief in 1987. After an evidentiary hearing on some of the claims, the circuit court denied relief.
In his first claim on appeal, Rose argues that his trial counsel, Darryl Rousen, rendered ineffective assistance in the penalty phase by failing to prepare and present mitigating evidence. Rose argues that mitigating evidence regarding his family background, his chronic alcohol abuse, and his intoxication on the night of the offense could and should have been presented.
To warrant relief on this claim, Rose must demonstrate: (1) that his counsel's performance was deficient; and (2) a reasonable probability that the result of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). After an evidentiary hearing on this claim, the court below found that Rose failed to establish either prejudice or deficient performance.
Initially, we note that Rousen had limited time to prepare for trial, due in large part to Rose's own actions. A team of two public defenders was originally appointed to represent Rose in October 1982. In January 1983, Rose sought to dismiss the public defenders because of an "irreconcilable conflict." The same public defenders had represented Rose in an earlier case and Rose had filed a grievance proceeding against them alleging gross misconduct, negligence, and ineffective assistance with respect to the earlier representation. The trial judge appointed a new attorney in February. Trial was set for mid-March. However, that attorney withdrew because of case load conflicts. The next attorney was appointed only a few days before trial was set to begin. He was allowed to withdraw after Rose told him that he did not want him as his attorney and refused to waive speedy trial to allow time to prepare for trial.
Rousen was appointed on March 31. Trial was set for April 11. On April 7, Rousen moved to withdraw because Rose refused to waive his right to speedy trial. Finally, Rose agreed to waive speedy trial to allow Rousen to conduct discovery. Trial was ultimately set for late June.
Rose presented the testimony of two mental health experts at the postconviction hearing. Dr. Krop diagnosed Rose as suffering from chronic alcohol and drug abuse and having minimal brain damage. Although Dr. Krop did not find any statutory mitigating factors present, he testified that several nonstatutory mitigating circumstances existed: Rose was raised in an abusive and neglected environment; his parents were alcoholic; he was a sickly child; he was viewed as different by his parents, peers, and himself; and he was intoxicated at the time of the offense.
Dr. Fox testified that Rose was suffering from an extreme mental disturbance at the time of the murder due to his chronic alcoholism. In addition, Dr. Fox opined that Rose's capacity to conform his conduct to the requirements of law was substantially impaired and that Rose lacked the specific intent to commit the crime due to his intoxication. We note that Dr. Fox's conclusions conflicted with those of Dr. Krop. The circuit court rejected Dr. Fox's testimony regarding the existence of statutory mitigating factors as farfetched and unworthy of belief. The trial court has broad discretion in determining the applicability of mitigating circumstances and may accept or reject the testimony of an expert witness. Roberts v. State, 510 So.2d 885, 894 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). The *294 trial court did not abuse its discretion in rejecting Dr. Fox's testimony.[1]
Rousen testified below that at the guilt phase of trial, Rose insisted on presenting the defense that he was innocent and was not present at the scene of the murder. Against Rousen's advice, Rose would not allow counsel to pursue other defenses such as insanity or intoxication. According to Rousen, Rose did not change his posture at the penalty phase. "When a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987). Rousen testified that once the case reached the penalty phase, he tried to raise issues of insanity, intoxication, and lack of specific intent to the extent possible while still maintaining Rose's innocence. Given the limitations placed on him by Rose, Rousen made reasonable tactical decisions with respect to the presentation of mitigating evidence. See Jones v. State, 528 So.2d 1171, 1175 (Fla. 1988) (where guilt-phase defense was that defendant was innocent, counsel made reasonable tactical decision in not calling psychiatrist to testify at penalty phase that defendant was paranoid where counsel concluded that the testimony would destroy the defense's credibility with the jury and would not harmonize with other mitigating evidence).
We further find that Rousen conducted a reasonable investigation into possible mitigation related to Rose's alcoholism and intoxication and made reasonable tactical decisions with respect to the existing mitigation. Rousen testified that he discussed potential mitigating factors with Dr. Slomin, the court-appointed psychologist, prior to the penalty phase. Dr. Slomin diagnosed Rose as suffering from antisocial personality disorder with alcohol abuse. Slomin and Rousen decided that the voluntary use of alcohol or drugs was not necessarily a good mitigating defense. They ruled out the possibility of organic brain syndrome because of the results of testing and because of Rose's recall of the events on the night of the murder. Rousen and Dr. Slomin testified below that they determined that the best course of action was to present the facts to the jury and argue that a person with antisocial personality disorder could function well in prison and should not be executed.
Even if Rose had given defense counsel freedom to pursue more fully the effects of his alcoholism and intoxication, we find no reasonable probability that the testimony presented at the postconviction hearing on these issues would have changed the jury's recommendation of death or the trial court's imposition of the death penalty. The jury was aware of most of the nonstatutory mitigation brought out by Dr. Krop. Dr. Slomin testified at the penalty phase that Rose's parents and brothers allegedly were alcoholics and that Rose may have been in an alcoholic blackout at the time of the offense. In addition, the jury was aware that Rose was an alcoholic and that he had consumed a substantial amount of alcohol prior to the murder.
Counsel was not ineffective in not calling Rose's family members in the penalty phase to testify about his family background. In reviewing this claim, it must be remembered that Rose was thirty-two years old when the murder was committed. Two of Rose's cousins testified at the post-conviction hearing that Rose's parents were alcoholics and were verbally abusive to the children. One cousin described an incident when Rose was slapped by one of his parents. Rose's brother testified that their parents were alcoholics, that their mother physically abused the children, that Rose has a chronic drinking problem, that Rose had rheumatic fever as a child, and that other children picked on Rose because of his dark complexion.
Rousen testified that he did not contact family members because Rose indicated to him that his family would not be helpful to *295 him. In the testimony below, one of the cousins admitted that she saw Rose's family only once or twice a year as she was growing up. Before 1987, she had not had contact with Rose for a period of more than twenty years. Rose's brother admitted that Rose is a violent person when he is drinking or on drugs and that this has been a continuous pattern since childhood. In light of the harmful testimony that could have been adduced from Rose's brother and the minimal probative value of the cousins' testimony, we are convinced that the outcome would not have been different had their testimony been presented at the penalty phase.
In his next claim, Rose argues that Dr. Slomin conducted an inadequate psychological evaluation. He asserts that Dr. Slomin did not pursue certain areas of mitigation because of lack of time and that he failed to obtain adequate background information from which would he would have found substantial mitigation.
We have held that a new sentencing hearing is warranted "in cases which entail psychiatric examinations so grossly insufficient that they ignore clear indications of either mental retardation or organic brain damage." State v. Sireci, 502 So.2d 1221, 1224 (Fla. 1987).
There is no suggestion that Dr. Slomin ignored "clear indications" of mental health problems. We note that Dr. Krop initially concluded that Rose did not suffer from brain damage. Only after he performed more testing at Dr. Fox's suggestion did Dr. Krop conclude that the evidence suggested that Rose suffers from minimal brain damage. Further, Rose presented no evidence indicating that Dr. Slomin's examination was insufficient. Neither of the defense's mental health experts expressed an opinion on the sufficiency of Slomin's evaluation of Rose. They merely reached different conclusions than Slomin. The fact that Rose has now obtained a mental health expert whose diagnosis differs from that of the defense's trial expert does not establish that the original evaluation was insufficient.
At the evidentiary hearing below, Dr. Slomin stood by his original diagnosis of Rose. In addition, from Slomin's testimony at trial and at the postconviction hearing, it is apparent that he was aware of most of the nonstatutory mitigating matters brought out by Dr. Krop. We find no possibility that the additional evidence presented at the postconviction hearing would have affected the outcome of this case.
Next, Rose alleges that error resulted from an in camera discussion between defense counsel and the trial judge during the course of the trial. An understanding of the events surrounding the in camera discussion is necessary to the resolution of this claim.
As noted above, Rose had difficulty with three of the four attorneys appointed prior to Rousen. On the second day of trial, Rose complained about the way Rousen was handling the trial and asked the court to dismiss him as counsel. The trial judge gave Rose overnight to organize his thoughts and listened to his complaints about Rousen the next morning. The judge refused to dismiss Rousen. Rousen then moved to withdraw from representing Rose because of an "ethical conflict."
At that point, the trial judge held an in camera discussion with Rousen. The discussion is not a part of the trial record. According to Rousen's testimony below, he and the judge discussed his reasons for wanting to withdraw. Rousen told the judge that there were differences between his and Rose's theories of strategy and defense, that he had doubts about Rose's innocence, and that he was beginning to lose confidence in himself. The judge reminded Rousen of his ethical obligation to provide vigorous representation regardless of his client's guilt or innocence. The judge then told Rousen to think about the matter and if he felt that his feelings toward Rose or his doubts about his innocence would in any way undercut his representation, she would let him withdraw. Ultimately Rousen determined that he could overcome his negative feelings and their differences, and he indicated that he would continue on the case.
*296 Rose argues that his right to be present was violated because he was excluded from the discussion between the judge and Rousen. The constitutional right to be present is rooted to a large extent in the Confrontation Clause of the Sixth Amendment. United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). However, the right of presence is protected to some extent by the Due Process Clause where the defendant is not actually confronting witnesses or the evidence against him. Id. A defendant has a due process right to be present at any stage of the proceeding that is critical to its outcome, if his presence would contribute to the fairness of the proceedings. Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); Francis v. State, 413 So.2d 1175, 1177 (Fla. 1982). A defendant has no right to be present when his presence would be useless or the benefit a shadow. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The exclusion of a defendant from a trial proceeding should be considered in light of the whole record. Id. at 115, 54 S.Ct. at 335.
We do not believe that the in camera discussion could have had an effect on the fairness of the proceedings against Rose. This is not a situation, as in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), where the trial court imposed the death sentence in part on the basis of information that the defendant had not seen and had no opportunity to deny or explain. No evidence was presented or discussed during the in camera discussion. There was no discussion of anything that would bear on the judge's ultimate sentencing decision in this case. The conversation focused on the problems between Rousen and Rose and on Rousen's concern about his ability to provide a proper defense given those problems. Rose could not have added anything of benefit to this discussion. The judge was well aware of Rose's complaints about Rousen. Further, the judge was fully aware of the history of problems between Rose and his previous attorneys.
We do not find the fact that counsel expressed his personal doubts about the guilt or innocence of his client to have prejudiced Rose. Counsel's personal qualms about Rose's guilt or innocence were not relevant to any sentencing issue. Indeed, by the time of sentencing Rose's guilt had been established. We see no way that this ex parte discussion could have influenced the judge's sentencing decision.[2]
Next, Rose claims that the trial court erred in summarily denying his claim of ineffective assistance in the guilt phase of his trial. To be entitled to an evidentiary hearing on this claim, Rose "must allege specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced [him]." Roberts v. State, 568 So.2d 1255, 1259 (Fla. 1990). Rose raises the following specific allegations of ineffective assistance: (1) counsel failed to challenge evidence regarding blood found on Rose; (2) counsel failed to point out inconsistencies in the eyewitness testimony and failed to obtain an expert in eyewitness identification; (3) counsel failed to object when the prosecutor in closing argument misrepresented the testimony of the four eyewitnesses; and (4) counsel failed to object when the prosecutor told the jury that there was evidence that they did not hear that would be disclosed to the judge in a presentence investigation report.[3]
*297 We have reviewed the trial record and find that it conclusively rebuts Rose's claims that his counsel provided ineffective assistance in the guilt phase. Rousen brought out on cross-examination and in closing argument that the State had failed to prove that the blood on Rose and his clothing belonged to the victim and that the State had "messed up" the results of the blood tests. Rousen's decision not to present evidence on the blood samples in the defense case was a reasonable trial tactic. Rather than risk an analysis with potentially unfavorable results, Rousen chose to attack the State's lack of evidence on this issue.
Rousen also effectively cross-examined the eyewitnesses to the crime. He pointed out inconsistencies between the eyewitnesses' testimony, as well as differences in the trial testimony of each witness and his or her earlier statements. Counsel brought out those inconsistencies in closing argument. Rose has failed to show any prejudice resulting from the failure to obtain an expert in eyewitness identification.
Finally, even assuming that the prosecutor's comments during closing argument were improper, we are convinced upon our review of the record that no possible prejudice to Rose resulted from those comments.
In a related claim, Rose argues that defense counsel was ineffective in the guilt phase in failing to present expert and lay testimony regarding the effect and legal ramifications of his intoxication at the time of the crime. He argues that evidence of his intoxication could have been used to negate specific intent to commit the murder. Given Rose's insistence that he was not present when the crime was committed and his demand that counsel present innocence as his defense, we find no merit in this claim. Mitchell v. Kemp, 762 F.2d at 889.
Rose asserts that a death sentence on the facts of this case is disproportional. We rejected this argument on direct appeal. Rose v. State, 472 So.2d at 1159. Relying on Parker v. Dugger, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), Rose argues that the claim is not procedurally barred because the Court now has the benefit of "substantial mitigation" which was not presented at the original trial. Parker is not subject to retroactive application in this postconviction proceeding. See Francis v. Barton, 581 So.2d 583, 584 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 2879, 115 L.Ed.2d 1045 (1991). Furthermore, Parker is wholly inapplicable to this case. Parker involved a jury override and the failure to adequately consider nonstatutory mitigating evidence presented at the trial rather than additional evidence presented at a postconviction proceeding. This claim is procedurally barred.
Rose also claims that the sentencing jury and judge were erroneously allowed to consider nonstatutory aggravating circumstances. This claim was raised and rejected on direct appeal. Rose v. State, 472 So.2d at 1158. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), does not require us to reconsider the claim.
We reject the claim that the sentencing jury was misled by instructions and argument that diluted their sense of responsibility pursuant to the rationale of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and that counsel was ineffective for failing to object. The jury instructions correctly informed the jury of its sentencing role. See Combs v. State, 525 So.2d 853 (Fla. 1988).
The claims that jury instructions improperly shifted the burden of proof to Rose on whether he should live or die and that the instruction that a verdict of life must be made by a majority of the jury misled the jury are procedurally barred. There was no objection to the jury instructions and the issues were not raised on direct appeal.
Finally, Rose claims that the jury instructions on the aggravating factors of especially heinous, atrocious, or cruel and cold, calculated, and premeditated failed to properly channel his jury's discretion. He points out that the United States Supreme *298 Court has recently ruled that the same jury instruction given in Rose's trial with respect to heinous, atrocious, and cruel[4] was unconstitutionally vague. Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). It should be noted, however, that while Rose objected to the applicability of these aggravating factors, he made no objection to the wording of the instructions. Further, Rose made no argument concerning the wording of these instructions on direct appeal. Thus, his claim is now procedurally barred. Kennedy v. Singletary, 602 So.2d 1285 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).
Accordingly, we affirm the denial of relief on the motion for postconviction relief.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., and SHAW and KOGAN, JJ., concur in result only.
NOTES
[1] Rose also presented the testimony of attorneys familiar with his case. The attorneys testified that information regarding Rose's chronic alcohol abuse and intoxication on the night of the murder should have been presented in mitigation.
[2] Rose also claims with regard to this issue that his counsel failed in his duty to provide zealous representation. The fact that defense counsel, who was representing a difficult client, experienced frustration and personal doubt during the course of the trial does not indicate that counsel provided less than zealous representation. We have reviewed the trial record in this case and find that counsel zealously represented Rose.
[3] In closing argument in the guilt phase, the prosecutor described to the jury what would occur in the second phase of trial in the event they found Rose guilty. He told the jury that they would hear evidence on aggravating and mitigating factors upon which they would render a recommendation, after which court investigators would prepare a presentence investigation.
[4] In the sentencing order, the trial judge did not find this aggravating factor to be applicable to Rose's case.