676 So.2d 972 (1996)
Aileen Carol WUORNOS, Appellant,
v.
STATE of Florida, Appellee.
No. 81498.
Supreme Court of Florida.
May 9, 1996.
Rehearing Denied July 10, 1996.
*973 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Margene A. Roper, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
We have on appeal the first-degree murder conviction and judgment of the trial court imposing a death sentence upon Aileen Carol Wuornos. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On November 18, 1990, sixty-two-year-old Walter Antonio left Cocoa, Florida, for Montgomery, Alabama. The next day his nude body was found in a wooded area north of Cross City, Florida. Evidence showed he had been shot four times in the back with a.22 caliber gun.
Law officers eventually arrested Aileen Carol Wuornos on charges of murdering and robbing Antonio. In a confession, Wuornos said she was engaging in roadside prostitution when she was picked up by Antonio. She asked him if she could "make some money," and he agreed. The pair then proceeded to an isolated wooded area.
At this point Wuornos said Antonio pulled out a false police badge and said he could arrest her but would not do so if she had sex with him for free. Wuornos said she challenged him, contending he was not a law officer. He kept on making his demand for sex, she said, and she then pulled a gun. She said a struggle ensued, during which she shot Antonio twice. According to her confession, Antonio called her a profane name, and she shot him twice more. Wuornos then said she took some of Antonio's personal effects and his car and fled.
Law officers later determined that Wuornos had pawned a ring belonging to Antonio, and they also found a number of his belongings in a mini-warehouse rented by Wuornos. Wuornos' lover, Tyria Moore, cooperated with officers and showed them where Wuornos had tossed Antonio's pocket knife, handcuffs, and flashlights, and the murder weapon into a bay near where Wuornos had lived. Officers successfully recovered these items.
At trial Wuornos eventually entered a guilty plea. A penalty phase then was conducted before a jury, which returned a death recommendation by a vote of seven to five.
In aggravation, the trial court found the following: (1) that Wuornos had nine prior convictions for violent felonies; (2) that the murder was committed during a robbery and for pecuniary gain; (3) that the murder was cold, calculated, and premeditated without *974 pretense of moral or legal justification; and (4) that the murder was committed to avoid lawful arrest.
In mitigation, the trial court found no statutory factors present. However, the judge found the following nonstatutory mitigators: (1) that Wuornos suffered antisocial and borderline personality disorders; (2) that she may have been physically abused as a child; (3) that her natural father and grandfather had committed suicide; (4) that her grandmother died an alcoholic; and (5) that her mother abandoned her as an infant.
The trial court then sentenced Wuornos to death on the murder conviction and a consecutive term of seventeen years on the armed robbery conviction.
Wuornos now challenges her convictions and sentences on a number of bases. First, she argues that the trial court erred in accepting her guilty plea. As grounds, she argues that defense counsel professed a lack of experience needed to represent her during a guilt-phase trial and, as a result, had an inherent conflict of interest when permitting her to enter a guilty plea that obviated such a proceeding. We find that this argument constitutes a claim of ineffective assistance of counsel not cognizable on direct appeal, but only by collateral challenge. See Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). The record clearly reflects an abiding conviction on the part of Wuornos to plea guilty notwithstanding the possibility of receiving the death penalty, as well as her repeated assertion that counsel was effective in his representation and was following her wishes. We therefore cannot say that this record demonstrates ineffectiveness on its face, which could in a proper case make the claim cognizable on direct appeal. See Loren v. State, 601 So.2d 271, 273 (Fla. 1st DCA 1992). Because this issue is not ripe for review, we will not address it here.
As her second and third issues, Wuornos similarly contends that her plea was not voluntary because defense counsel did not adequately advise her as to the consequences of her action; and that defense counsel further demonstrated ineffectiveness due to alleged misstatements and misunderstandings of the applicable law. For the reasons expressed above, these ineffectiveness claims are not ripe for review in this appeal.
Fourth, Wuornos argues that the trial court erred in finding the murder aggravated by the factor of cold, calculated premeditation. She believes there was no proof of the careful plan or prearranged designed required by Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and that she acted under at least a pretense of moral or legal justificationself defensein the killing. After reviewing the record, we find that the most that can be said is the evidence is conflicting on these questions. Wuornos was the only witness to the crime, but her exculpatory testimony lawfully could be rejected by the finder of fact in light of her various inconsistent statements. Moreover, her version of events is further undermined by the fact that she armed herself in advance and earlier had confessed that she killed in order to silence her victims. The State's theory of the case prevailed here, and that theory rests on sufficient evidence establishing the factor of cold, calculated premeditation. We therefore are obligated to accept that theory as lawfully established. Wuornos v. State, 644 So.2d 1012, 1019 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1708, 131 L.Ed.2d 568 (1995). There was no error on this point.
Fifth, Wuornos contends that the instruction given to the jury on cold, calculated premeditation was the one condemned in Jackson v. State, 648 So.2d 85 (Fla.1994), requiring that we order a new penalty phase. She candidly acknowledges her failure to object to this instruction below, but argues that the seven-to-five jury recommendation demonstrates a sufficiently "close case" that we should lift the procedural bar. Nothing in our law permits such a result. Under Jackson, the failure to object raises a procedural bar that clearly applies here. We find no error.
As her sixth point, Wuornos urges that the trial court improperly ignored available mitigating evidence about her troubled *975 youth, her alleged intoxication at the time of the killing, and her psychological problems. We find that the trial court properly considered available evidence on these points in light of the court's determination of the credibility of evidence. The court's consideration of Wuornos' childhood in an abusive and tragedy-ridden environment clearly shows concern for the circumstances of her youth. Likewise, the court considered the fact that Wuornos suffered a personality disorder that may have contributed to her actions. We find no error in the trial court declining to consider the testimony of the expert Dr. Krop in light of the latter's equivocal testimony, his inability to say with certainty what her mental condition was the day of the murder, and the fact that Wuornos did not fully cooperate with Krop. Furthermore, the only evidence of Wuornos' intoxication at the time of the crime was her own statement to this effect, which the finder of fact was entitled to reject in light of her inconsistent statements.
Seventh, Wuornos argues that the trial court erred in declining to find the statutory factor of extreme emotional disturbance, as allegedly established in the testimony of Dr. Delbeato. In light of the fact that this expert testimony reasonably could be interpreted as inconsistent with the factual evidence, we find no error in the trial court's exercise of its discretion. As we have noted elsewhere, a trial court may reject opinion testimony that cannot be fully squared with the facts at hand. Walls v. State, 641 So.2d 381, 390-91 n. 8 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995).
Lastly, Wuornos contends that the trial court erred in not finding in mitigation the alleged fact that the victim contributed to the acts leading to his death. The gist of this argument is that, by seeking the services of a prostitute, the victim therefore "assumed the risk" of suffering bodily harm. We find that the theory advanced by Wuornos is insufficient as a matter of law to establish this particular mitigating factor. By its plain language, the statute permits this factor only where:
The victim was a participant in the defendant's conduct or consented to the act.
§ 921.141(6)(c), Fla.Stat. (1989). It would be absurd to construe this language as applying whenever victims have engaged in some unlawful or even dangerous transaction that merely provided the killer a better opportunity to commit murder, which the victim did not intend. What the language plainly means is that the victim has knowingly and voluntarily participated with the killer in some transaction that in and of itself would be likely to result in the victim's death, viewed from the perspective of a reasonable person. An example would be two persons participating in a duel, with one being killed as a result. The statute does not encompass situations in which the killer surprises the victim with deadly force, as happened here under any construction of the facts.
Having reviewed the record for further errors and finding none, the judgment and sentences of the trial court below are affirmed.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.