717 So.2d 477 (1998)
Michael T. RIVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 86528.
Supreme Court of Florida.
June 11, 1998.
Rehearing Denied September 9, 1998.
*479 Peter Warren Kenny, Capital Collateral Regional Representative-Southern Region, Miami; and Gail E. Anderson, Assistant CCR, and Harun Shabazz, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, for Appellee.
PER CURIAM.
Michael T. Rivera, a prisoner under sentence of death, appeals an order entered by the trial court below pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm in part, reverse in part, and remand for an evidentiary hearing on the penalty phase effectiveness of counsel.

PROCEDURAL HISTORY
The facts of this case are detailed in Rivera's direct appeal wherein we affirmed both his first-degree murder conviction and sentence of death. Rivera v. State, 561 So.2d 536 (Fla.1990). Rivera filed his 3.850 motion to vacate judgment and sentence on October 31, 1991, as well as a motion to disqualify the trial court judge. Rivera subsequently filed two amended 3.850 motions and two additional motions to disqualify the trial judge. The motions were all denied. The trial court held *480 evidentiary hearings on claims II (F,J, K), XIX, XX, and XXI. The trial court summarily denied the remainder of Rivera's claims. The trial court subsequently denied all relief on June 22, 1995. A motion for rehearing was denied on August 30, 1995.

APPEAL
Rivera raises twenty claims of error in this appeal,[1] most of which may be disposed of summarily.[2] We address the remaining issues in turn.

MOTION TO DISQUALIFY JUDGE
As his first claim of error, Rivera argues the trial judge, Judge Ferris, has exhibited bias against Rivera throughout the proceedings in this case and cites several specific instances as bases for his motion to disqualify the judge. For example, Rivera claims that the judge's written response to a parole commission inquiry that "I am inalterably opposed to any consideration for Executive Clemency and I believe the sentence of the court should be carried out as soon as possible" was sufficient to disqualify the judge from further presiding over this case. This claim is without merit.
We have repeatedly held that a motion to disqualify a judge "must be well-founded and contain facts germane to the *481 judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So.2d 103, 107 (Fla. 1992); Gilliam v. State, 582 So.2d 610, 611 (Fla.1991); Dragovich v. State, 492 So.2d 350, 352 (Fla.1986). The motion will be found legally insufficient "if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing." Correll v. State, 698 So.2d 522, 524 (Fla.1997). The fact that the judge has made adverse rulings in the past against the defendant, or that the judge has previously heard the evidence, or "allegations that the trial judge had formed a fixed opinion of the defendant's guilt, even where it is alleged that he judge discussed his opinion with others," are generally considered legally insufficient reasons to warrant the judge's disqualification. Jackson, 599 So.2d at 107 Under those standards, we now examine Rivera's proffered bases for Judge Ferris's disqualification.[3]
First, regarding Judge Ferris's letter to the Florida Parole Commission, we found no merit in the same claim made by the defendant in Suarez v. Dugger, 527 So.2d 190, 192 (Fla.1988). As part of the official clemency process for at least the last few decades, the Parole Commission seeks comments from sentencing judges[4] when considering clemency for any inmate, not only those with capital sentences. Here, in accord with that official process, Judge Ferris was simply responding to a query from the Parole Commission in expressing his views about Rivera's sentence. We consider this a legitimate act by a trial judge, and, indeed, can think of no person better positioned to reply to the commission's inquiry about a prisoner's sentence. As a matter of policy, we will not establish bright line rules regulating comments trial judges may make in response to Parole Commission queries in the course of the official clemency process. We do not find that the judge's comments here constitute a prejudgment of any pending or future motions that Rivera may file in his court or that they were made outside the official clemency process in a manner indicating a predisposed bias against the defendant. Compare Suarez, 527 So.2d at 192 (finding judge's extra-judicial statements to Naples Daily News compelled judge's disqualification because statements were sufficient to warrant fear on defendant's part that he would not receive a fair hearing from judge). Accordingly, we conclude that the trial court properly denied this claim as a ground for disqualification.
Second, Rivera claims that Judge Ferris based his death sentence on non-record information gained while presiding over Rivera's attempted first-degree murder trial, the Jennifer Goetz case. However, Rivera does not divulge precisely what facts from the other case Judge Ferris allegedly relied on in imposing a sentence of death. As such, his motion was not legally sufficient to merit the judge's disqualification. Jackson; Gilliam; Dragovich.
Finally, as the State notes, we allow post conviction depositions of the judge who presided over the defendant's trial "only when the testimony of the presiding judge is absolutely necessary to establish factual circumstances not in the record." State v. Lewis, 656 So.2d 1248, 1250 (Fla.1994). The judge's thought processes may not be inquired into and the judge may refuse to answer any question he or she deems intrusive. Id. at *482 1250. We also cautioned that such discovery techniques "should not be utilized as a technique to disqualify the original trial judge from further hearings in the case. The need to have a trial judge testify is very limited in scope and particularly applies only to factual matters that are outside the record." Id. at 1250 n. 3 (emphasis added).
In applying that standard to the facts of this case, we find that Rivera's claim is without merit. As the State points out, Rivera's claim regarding Judge Ferris's motivation in appointing Edward Malavenda as his trial counsel is, first, an impermissible intrusion into the judge's thought processes, and, second, totally misplaced since Malavenda had already been previously appointed to represent Rivera in two other cases by Judge Barry Stone on March 4, 1986, and Judge Ferris subsequently appointed him on August 14, 1986 to represent Rivera in the murder trial also. Similarly, Judge Ferris's prior representation of Juror Thorton's restaurant was disclosed by the judge during voir dire. Next, as noted above, Rivera's claim regarding Judge Ferris's alleged reliance on non-record evidence is legally insufficient. Finally, Rivera's other claims are issues that should have been raised on direct appeal, but are recast in a motion to disqualify.[5] Therefore, we conclude that Rivera did not proffer legally sufficient reasons requiring the judge's disqualification.

EXCLUSION OF EVIDENCE
Rivera argues that the jury never heard the evidence of alibi witnesses who allegedly stated that he was with them at the time of the murder. He claims that Mark Peters presented unrebutted testimony at the evidentiary hearing that Rivera picked him up between 6 and 6:30 and remained with him for the next thirty to thirty-five minutes. Rivera maintains that Peters' testimony provides him with an alibi because the victim was last seen alive between 6:30 and 7 and a deputy found her abandoned bicycle before 7:30. This claim is without merit.
The issue of when Rivera picked up Mark Peters on the night of the murder was strongly contested at the evidentiary hearing. Eventually, the parties seemed to agree that Peters' statement to the police in February 1986, several weeks after the murder, was his most accurate recollection of the approximate times. When asked by the police when Rivera picked him up at work, Peters replied: "Between 5:00 and 6:00, more than 6:00 and 7:00, but closest to 6:00." Peters also had stated that he was on his way home from work sometime between 6:15 and 7 p.m., after already dropping Rivera off at his house. The trial court denied Rivera relief on this claim after finding that Peters' own decision to leave the area prevented him from testifying at trial.
In order to establish an ineffective assistance of counsel claim, Rivera must show that counsel's performance was so deficient as to demonstrate that he was not functioning as "counsel" within the meaning of the Sixth Amendment, and, more importantly, that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is afforded wide latitude in providing a criminal defense and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.
Peters left Orlando after giving his information to both the police and Rivera's counsel, Edward Malavenda. He testified at the evidentiary hearing that he did not tell the police he was leaving and did not remember telling Malavenda he was leaving. Consequently, when the trial commenced, Malavenda had no alibi witnesses to present. Arguably, Malavenda should have presented Peters' deposition since he should have been able to establish his unavailability. Nevertheless, *483 neither Peters' deposition nor his live testimony would have provided Rivera with an alibi for the crucial time after 7 p.m., the approximate time after which the victim was murdered. Therefore, assuming, arguendo, that Rivera established that Malavenda rendered deficient performance, he still must satisfy Strickland's prejudice prong. We find that Rivera has not satisfied that prong of the test.
Finally, Rivera's sub-claims that either this information constitutes newly discovered evidence, or a Brady[6] violation, are without merit. First, by definition, newly discovered evidence only includes facts that were "unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.850(b)(1). The relevant facts were known by Malavenda and Rivera at the time of trial and thus do not constitute newly discovered evidence.
Second, to establish a Brady claim, Rivera must prove the following:
(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991) (quoting United States v. Meros, 866 F.2d 1304, 1308 (11th Cir.1989)). From the facts presented, it does not appear that Rivera can meet any of the four prongs required to establish a Brady violation. First, the fact alone that Rivera's counsel had this information renders Brady inapplicable. Second, whether this information was favorable is very debatable. Third, the State did not suppress this information since Peters unilaterally decided to leave the area. Finally, since this information was not exculpatory, Rivera cannot meet Brady's fourth and most important prong. We therefore affirm the trial court's denial of relief on this claim.

PRE-INDICTMENT DELAY
Rivera claims that because he was continuously held in jail, without counsel, for six months from the time of his arrest until his indictment, he lacked the assistance necessary to gather and preserve evidence during this time and therefore was prejudiced by the State's delay in obtaining an indictment. As a corollary, he argues that he was denied effective assistance of counsel due to counsel's failure to raise this issue at trial. This claim is without merit.
We established the test for determining a prejudicial pre-indictment delay in Rogers v. State, 511 So.2d 526 (Fla.1987). To substantiate a due process violation, the defendant has the initial burden of showing actual prejudice. Id. at 531. If that burden is met, the court must then "balance the demonstrable reasons for delay against the gravity of the particular prejudice on a case-by-case basis." Id. In the end, the "outcome turns on whether the delay violates the fundamental conception of justice, decency and fair play embodied in the Bill of Rights and fourteenth amendment." Id.
In a case applying the test set forth in Rogers, we found that a seven-year, seven-month delay in bringing an indictment comprised such a due process violation. Scott v. State, 581 So.2d 887 (Fla.1991). First, we determined that Scott had demonstrated actual prejudice from the delay:
The record establishes that Scott is no longer able to corroborate his alibi that initially was checked out by law enforcement officials; that he was unable to present certain witnesses in his defense because the witnesses had died in the interim; that investigative reports, statements, and evidence that may have been helpful to Scott were lost as a result of the delay and because of changes in law enforcement personnel and administrations; *484 and, finally, that the reliability of the hair comparison evidence was adversely affected by the delay and the manner in which the comparison was made.
Id. at 892-93. From there, we concluded that the State had shown absolutely no justification for any investigative delay. Id. at 893. Accordingly, a due process violation was found "under the unique circumstances" of Scott's case. Id.
Turning to this case, Rivera claims that the State's six-month, pre-indictment delay precluded the investigation and preparation of his alibi defense. As support, he cites Anthony Wade's sworn statement to the police placing Rivera at the carnival at approximately 7:30 p.m. He also cites Mark Peters' testimony at the evidentiary hearing regarding his whereabouts between 6 and 7 p.m. However, as discussed in the previous claim, Peters' testimony would not have provided Rivera with an alibi for the time when the murder occurred: sometime after, at the latest, 7 p.m.
The bottom line is that with or without Peters' and Wade's statements, Rivera has no alibi at all for his whereabouts between 7 and 7:30 p.m., and a weak alibi between 6:15 and 7 p.m. considering Peters' imprecise recall of when he was with Rivera that evening.[7] The victim, Staci Jazvac, was murdered sometime after last being seen by a store cashier between 6:30 and 7 p.m. Thus, Rivera had ample time to murder the victim, especially since her body was found only several miles from the site of the abduction. Rivera, 561 So.2d at 537. Rivera cannot demonstrate actual prejudice such as that shown by the defendant in Scott. Rivera never had an alibi for the critical thirty minutes between 7 and 7:30 p.m. Compare Scott, 581 So.2d at 892 (finding Scott was "no longer able to corroborate his alibi that initially was checked out by" police) (emphasis added). Therefore, since Rivera cannot demonstrate actual prejudice, that ends our inquiry under Rogers. Accordingly, we affirm the trial court's denial of this claim on the merits, while recognizing, as the State candidly acknowledges, that the trial court erroneously found the ineffective assistance portion of this claim procedurally barred.[8]See Wuornos v. State, 676 So.2d 972, 974 (Fla.1996) (concluding that claim of error on direct appeal constituted an ineffective assistance claim cognizable "only by collateral challenge"); Kelley v. State, 486 So.2d 578, 585 (Fla.1986) (stating that ineffective assistance claims are generally not reviewable on direct appeal and are more properly brought in postconviction motions).

PENALTY PHASE PERFORMANCE OF COUNSEL[9]
Rivera claims that if counsel had adequately investigated and prepared for the penalty phase, he could have presented a wealth of mitigating factors. He argues that he was prejudiced by counsel's allegedly deficient performance because the trial court found only one statutory mitigator[10] despite the fact that numerous mitigating factors allegedly existed and could have been considered. The trial judge ruled that this claim was procedurally barred. While the State concedes that this claim was not procedurally barred, it argues that the allegations of ineffectiveness were insufficient to require an evidentiary hearing. We disagree.
Rivera claimed in his postconviction motion and in his brief to this Court that the following potential mitigation was available if counsel had adequately investigated Rivera's personal history: (1) dissociative disorder; (2) psychosexual disorder; (3) history of hospitalization for mental disorders; (4) sexual *485 abuse as a child; (5) expressions of remorse; (6) a substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (7) childhood trauma; (8) developmental age; (9) long-term personality disorder; (10) acceptable behavior at trial; (11) reduction in sentence by trial judge in prior case of sexual battery; (12) under influence of drugs at time of offense; (13) non-applicability of the aggravators; (14) drug abuse problem; (15) character testimony from family members; (16) psychotic depression and feelings of rage against himself because of strong pedophilic urges; (17) no drug or alcohol treatment program; (18) substantial domination by alternate personality; (19) artistic ability; (20) capable of kindness; and (21) family loves him. Considering the volume and extent of these alleged mitigators in comparison to the limited mitigation actually presented at trial, we agree with Rivera that he warrants an evidentiary hearing on his claim of penalty phase ineffective assistance of counsel. Cherry v. State, 659 So.2d 1069, 1074 (Fla.1995); Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla.1995).

VOLUNTARY INTOXICATION DEFENSE
Rivera next argues that trial counsel failed to use plentiful evidence of Rivera's voluntary intoxication at the time of the offense, and that numerous lay witnesses, including Rivera's brother and sister, would have testified as to the extreme nature of Rivera's substance abuse in early 1989. Rivera notes that Dr. Milton Burglass, a psychiatrist who testified at the evidentiary hearing below and who specializes in addictions, opined that Rivera's "chronic history" of drug and alcohol addiction impaired his ability to form the specific intent required to commit first-degree murder. Therefore, Rivera claims that counsel rendered ineffective assistance in not pursuing a voluntary intoxication defense during the guilt and penalty phases of his trial.[11]
This claim is without merit as to the guilt phase. As the State notes, Malavenda did not pursue a voluntary intoxication defense at trial because Rivera maintained his innocence. Beyond the fact that this was probably a sound tactical decision since there was no evidence Rivera was intoxicated at the time of the murder, we have determined that "[w]hen a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." Rose v. State, 617 So.2d 291, 294 (Fla.1993) (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985)). Therefore, since a voluntary intoxication defense is, in effect, an admission that you did the crime but lacked the specific intent to be held criminally responsible,[12] Rivera's unwavering professions of innocence short-circuited any credible voluntary intoxication defense during the guilt phase. Accord Remeta v. Dugger, 622 So.2d 452, 455 (Fla.1993) (approving counsel's tactical decision to forego a voluntary intoxication defense which was inconsistent with defendant's theory of the case that accomplice was the main perpetrator and triggerman in the murder). Accordingly, we find that Malavenda was not ineffective in foregoing such a strategy, Rose, and affirm the trial court's denial of relief on this claim.

PRIOR VIOLENT FELONY AGGRAVATOR
Prior to his capital trial in this case, Rivera was convicted of kidnapping, attempted first degree murder, aggravated child abuse, and aggravated battery. These convictions were introduced and relied upon in the capital case to support the prior violent felony aggravator. However, the aggravated battery and aggravated child abuse convictions were later vacated. Rivera v. State, 547 So.2d 140 (Fla. 4th DCA 1989). Rivera argues that his *486 death sentence was imposed in violation of the Eighth Amendment, on the basis of the Supreme Court's opinion in Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). This claim is meritless.
Despite the reversal of two of Rivera's prior violent felony convictions, he still has three other prior violent felony convictions which support this aggravator, thus precluding resort to the Supreme Court's decision in Johnson as a basis for relief. As we observed in Bundy v. State, 538 So.2d 445, 447 (Fla.1989), the defendant's death sentence in Johnson was set aside by the Supreme Court because his New York assault conviction, which provided the sole basis for his prior violent felony aggravator, had been reversed.[13] Obviously, Rivera can make no such claim. Therefore, we affirm the trial court's ruling on this claim of error.

GUILT PHASE PERFORMANCE OF COUNSEL
Rivera next claims that the following instances of ineffective assistance of counsel occurred during the guilt phase: that evidence from jailhouse informants was improperly presented; that the jury never heard evidence that Rivera's statements during several obscene phone calls to female witnesses regarding the victim were Rivera's sexual fantasies; that the jury never knew that Rivera lacked sufficient capacity to form the specific intent to kill; that the jury never heard available evidence that the victim was dead prior to the occurrence of any sexual battery; that the defense pathology expert was not prepared to testify; and that counsel repeatedly failed to object to the State's introduction of inadmissible and unduly prejudicial evidence.
To begin, we find Rivera's first sub-claim regarding jailhouse informants procedurally barred since it should have been raised on direct appeal. Moreover, in arguing that the State improperly presented this evidence, Rivera does not attempt to overcome the procedural bar by alleging ineffective assistance in this sub-claim.
Next, to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the Supreme Court has afforded attorneys wide latitude in prosecuting a cause and, accordingly, erected a high hurdle to those petitioners alleging ineffective assistance of counsel. To that end, the Court observed that:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Therefore, to prevail on these numerous claims, Rivera must overcome a strong presumption that Malavenda's conduct falls outside the "wide range of reasonable professional assistance," and, if he does, establish prejudice therefrom.
With those standards in mind, Rivera asserts ineffective assistance in his second sub claim because Malavenda did not present evidence supporting a "sexual fantasy" theory. However, as the State notes, neither Dr. Berlin nor Dr. Ceros-Livingston could testify that Rivera's admissions to Starr Peck and Angela Green regarding the murder were merely sexual fantasies. Therefore, we find that Malavenda made a sound tactical decision not to present this evidence and therefore did not render ineffective assistance of counsel.
For the same reasons expressed in our disposition of claim (5), we find Rivera's third sub-claim to be without merit regarding Malavenda's decision not to present a voluntary intoxication defense or argue that Rivera lacked the specific intent to kill.
*487 Rivera next argues that counsel was ineffective for not presenting evidence that the victim was dead prior to any sexual battery, thus undermining a valid felony murder conviction. This issue is without merit for several reasons: the underlying felony need not actually be charged to support a felony murder conviction, Sochor v. State, 619 So.2d 285, 290, 292 (Fla.1993); and counsel's inaction in no way affected the murder during commission of an enumerated felony aggravator, since that aggravator was also predicated on the victim's kidnapping.
The subclaim regarding the defense pathology expert is similarly meritless because, as the State notes, it is really relitigating a denied motion for continuance that the trial court found procedurally barred. Finally, Rivera cites eighteen separate instances where Malavenda's failure to object allegedly led to the introduction of "inadmissible and unduly prejudicial evidence." However, nowhere in this litany of subclaims does Rivera demonstrate that any errors prejudiced him to the point where a reasonable probability existed that, but for those errors, his trial's outcome would have been different. Similarly, Rivera's subclaim regarding alleged alibi witnesses is unpersuasive since neither the deposition of Mark Peters nor that of Anthony Wade provided Rivera with an alibi as to his whereabouts at the time of the murder. Thus, Malavenda's performance was at least "within the wide range of reasonable professional assistance," Strickland, and not prejudicial to Rivera's defense.

WILLIAMS RULE EVIDENCE
Finally, Rivera argues that because two of his four Williams[14] rule convictions were reversed on appeal, it cannot be concluded beyond a reasonable doubt that the collateral crime evidence did not have an impact on the jury. His claim is without merit.
Although Rivera did argue this issue on direct appeal, Rivera, 561 So.2d at 538-39, we agree that it should not be procedurally barred because, as he correctly notes, two of his four convictions were reversed in Rivera v. State, 547 So.2d 140 (Fla. 4th DCA 1989). In that case, the Fourth District found that Rivera was convicted of attempted murder, aggravated battery, and aggravated child abuse on the basis of one act  the choking of the victim. Id. at 142. Because a defendant may not be subjected to multiple punishments for the same act,[15] the district court reversed the two lesser charges and affirmed the "highest sustainable crime," attempted first-degree murder. Id. Nevertheless, Rivera's two most serious prior convictions for attempted first-degree murder and kidnapping remain valid. Therefore, we find that the erroneous introduction of some Williams rule evidence was harmless beyond a reasonable doubt because there is "no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).

CONCLUSION
We reverse the summary denial of the motion for postconviction relief as it pertains to the penalty phase performance of counsel and remand for an evidentiary hearing on this issue to be held within ninety days of the release of this opinion. We affirm the orders denying the motion for postconviction relief on all other issues.
It is so ordered.
OVERTON, SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs in result only.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., concurs.
ANSTEAD, Justice, concurring in part and dissenting in part.
In Suarez v. Dugger, 527 So.2d 190 (Fla. 1988), we unanimously ordered disqualification *488 based upon statements made by a trial judge that are virtually indistinguishable from the statements made here by the trial judge to the Parole Commission. The statement by the trial judge in Suarez that particularly concerned this Court was a statement that the judge did not believe the case merited postponement of the execution of the sentence. This Court concluded that the judge's statement was "sufficient to warrant fear" on the part of the capital defendant that he would not receive a fair hearing by that judge. Id. at 192. In this case the trial judge has publicly stated:
I am inalterably opposed to any consideration for Executive Clemency and I believe the sentence of the court should be carried out as soon as possible.
We must also consider that this statement was not made in a vacuum, but rather was made by a judge who had earlier been quoted publicly as saying that he believed the defendant had committed many crimes in the past and society should not let him "visit this conduct on anyone else."
It matters little that the public statement involved herein was made to the clemency authorities while the statement in Suarez was made to the press. After all, it is what is actually said that is determinative of the issue, rather than the audience intended. As a majority of the justices pointedly noted in Suarez:
It is trite but true to say that judges must be circumspect and careful at all times in their utterances, oral or written, because it is so easy to construe a statement, although innocently made and made in the abstract, as applicable to a matter that may come up before the court at a later time and thereby be indicative of a prejudice by the judge as to the matter at hand. No matter that the judge was not prejudiced, the perception is there and cannot be obliterated by protestation or denial, and the judicial and impartial effectiveness of the judge as to that matter is destroyed for all time.
The interview in question is a classical example of the verity and wisdom of this admonition.
Suarez v. Dugger, 527 So.2d 190, 193-194 (Ehrlich, J., concurring specially with an opinion in which McDonald, C.J., and Overton and Kogan, JJ., concurred). As this case vividly illustrates, so long as there is a reasonable prospect that a case may be back before a judge on collateral proceedings, a judge "must be circumspect and careful" not to make statements, even to another government agency, "because it is so easy to construe a statement, although innocently made and made in the abstract, as applicable to a matter that may come before the court at a later time and thereby be indicative of a prejudice by the judge as to the matter at hand." Id. Because our decision here cannot be squared with our decision in Suarez, I must dissent on this issue.
KOGAN, C.J., concurs.
NOTES
[1] Rivera's claims are: (1) whether Rivera was denied due process, a full and fair hearing, and an impartial tribunal on his motion to vacate; (2) whether due process was violated by the exclusion of evidence which may have gone to reasonable doubt; (3) whether Rivera was denied effective assistance of counsel due to counsel's failure to raise a prejudicial pre-indictment delay issue; (4) whether counsel's performance was deficient in not presenting certain evidence during the penalty and sentencing phases; (5) whether counsel's performance was deficient in not presenting a voluntary intoxication defense; (6) whether Rivera was sentenced to death in violation of the eighth amendment; (7) whether Rivera's sentence of death rests upon an unconstitutional aggravator; (8) whether Rivera was denied his right to a fair and impartial jury; (9) whether the trial court's rulings cumulatively denied Rivera a fair trial; (10) whether Rivera was denied effective assistance of counsel during the guilt phase; (11) whether counsel was ineffective in failing to insure that the penalty phase jury received accurate instructions; (12) whether the eighth amendment was violated by the trial court's refusal to consider mitigating circumstances set out in the record; (13) whether counsel was ineffective in not objecting to the penalty phase jury instructions; (14) whether due process was denied when the court relied on facts not of record in sentencing Rivera; (15) whether the trial court unconstitutionally burdened Rivera in establishing mitigators beyond a reasonable doubt; (16) whether Rivera's penalty phase jury received instructions guiding and channeling its sentencing discretion; (17) whether counsel's failure to object to misleading evidence was ineffective assistance of counsel; (18) whether the procedure whereby appointed counsel is selected and funded in Broward County creates an irreconcilable conflict of interest; (19) whether the State's introduction of Williams rule evidence is reversible error since two convictions were reversed on appeal; and (20) whether the trial court's cumulative errors denied Rivera a fair trial.
[2] Claims (7), (8), (9), (11), (14), (16), and (20) could and should have been raised on direct appeal and are thus procedurally barred. Claim (12) is procedurally barred because Rivera is impermissibly using "a different argument to relitigate the same issue" he raised on direct appeal. Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995). Claim (13) regarding penalty phase jury instructions is procedurally barred because it could have been raised on direct appeal, id., and is meritless notwithstanding Rivera's conclusory ineffective assistance claim, which improperly attempts to circumvent the rule that postconviction proceedings are not a second appeal for issues properly litigated on direct appeal. Medina v. State, 573 So.2d 293, 295 (Fla. 1990); see also Kennedy v. State, 547 So.2d 912, 913 (Fla.1989) (precluding defendants from filing a postconviction motion "containing conclusory allegations that his or her trial counsel was ineffective"). Similarly, claim (15) is procedurally barred because it should have been raised on direct appeal, and is meritless because the record from Rivera's direct appeal clearly refutes his allegation that the trial judge required the defense to establish mitigators beyond a reasonable doubt. Instead, the judge instructed the jury that a "mitigating circumstance need not be proved beyond a reasonable doubt ... [and that if] you are reasonably convinced that a mitigating circumstance exists, you may consider it as established." Likewise, claim (17) is procedurally barred because the reverse Williams rule subclaim was unsuccessfully argued by Rivera on direct appeal, Maharaj v. State, 684 So.2d 726, 728 (Fla.1996) (reasoning "it is inappropriate to use a collateral attack to relitigate an issue previously raised on appeal"), while the subclaim regarding an informant's "apparently misleading testimony" should have been raised on direct appeal. Finally, we summarily reject claim (18), having previously characterized the same argument as "meritless on its face." Rose v. State, 675 So.2d 567, 569 n. 2 (Fla.1996).
[3] As a preliminary matter, we find procedurally barred Rivera's sub-claim relating to Judge Ferris's newspaper interview wherein Judge Ferris is quoted in the Fort Lauderdale Sun Sentinel as saying that he believed Rivera had committed many crimes in the past and society should not let him "visit this conduct on anyone else." A motion for disqualification may be filed at "any time before final judgment." § 38.02, Fla. Stat. (1991). The motion must be filed within 30 days after the movant learned of the alleged grounds for disqualification, "otherwise the ground, or grounds, of disqualification shall be taken and considered as waived." Id.; Steinhorst v. State, 636 So.2d 498, 500 (Fla.1994) (same). Accordingly, based on those authorities, we agree with the State that Judge Ferris' statement to the Fort Lauderdale Sun Sentinel five months before trial is forever waived as a ground for disqualification. See also Fla. R. Jud. Admin. 2.160(e) ("A motion to disqualify shall be made within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling.").
[4] Judges may respond to such queries in their own discretion.
[5] Rivera also claimed that Judge Ferris impermissibly allowed the courtroom to be filled with school children about the same age as the victim, and that he allowed the State to present impermissible victim impact evidence. Cf. Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995) (observing that "[t]o counter the procedural bar to some of these issues, Cherry has [impermissibly] couched his claim on appeal, in the alternative, in terms of ineffective assistance of counsel in failing to preserve or raise those claims").
[6] Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution").
[7] We note that during his testimony, Peters estimated that Rivera was 60 to 90 minutes late in picking him up from work that evening.
[8] Because we decide this claim adversely to Rivera on the merits, we need not reach his corresponding ineffective assistance of counsel sub claim on this issue.
[9] As with the previous claim, we agree with both Rivera and the State that the trial court improperly ruled that this ineffective assistance of counsel claim was procedurally barred. Wuornos; Kelley.
[10] Under the influence of extreme mental or emotional disturbance. § 921.141(6)(b), Fla. Stat. (1985).
[11] The penalty phase portion of this claim is mooted by our reversal of the trial court's ruling on claim (4).
[12] See Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985) (emphasizing that "voluntary intoxication is an affirmative defense and that the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged") (emphasis added).
[13] People v. Johnson, 69 N.Y.2d 339, 514 N.Y.S.2d 324, 506 N.E.2d 1177 (1987).
[14] In Williams v. State, 110 So.2d 654, 659-60 (Fla.1959), we established the following standard for the admission of collateral crime evidence:

Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.
[15] Carawan v. State, 515 So.2d 161, 163 (Fla. 1987).