547 So.2d 140 (1989)
Michael Thomas RIVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2941.
District Court of Appeal of Florida, Fourth District.
April 26, 1989.
Rehearing and Stay Denied August 30, 1989.
*141 Richard L. Jorandby, Public Defender, and Tanja Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, Richard G. Bartmon, (on the brief), *142 and John Tiedemann, Asst. Attys. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
The appellant, Michael Thomas Rivera, appeals his multiple convictions in the Broward County Circuit Court. We reject Rivera's claim that the trial court improperly admitted statements he made to the police, and affirm his convictions for attempted murder and kidnapping. However, we reverse convictions for child abuse and aggravated battery which were based on the same act as the attempted murder.

DOUBLE JEOPARDY
Rivera was charged with and convicted of: (1) kidnapping, (2) attempted murder in the first degree, (3) aggravated child abuse, and (4) aggravated battery, all arising out of his alleged attack on an eleven-year-old girl. Rivera contends that his single act of choking the victim resulted in three convictions, contrary to his constitutional protection against double jeopardy.
Both the United States and Florida constitutions prohibit subjecting a defendant to multiple punishments for the same act. Carawan v. State, 515 So.2d 161, 163 (Fla. 1987). In State v. Boivin, 487 So.2d 1037 (Fla. 1986), the supreme court, although holding that attempted first-degree murder and aggravated battery were separate offenses, went on to find "no legislative intent or recognition that society needs multiple punishments for both aggravated battery and attempted first-degree murder where both the attempted murder and the aggravated battery caused no additional injury to another person or property." Boivin at 1038. The court thus approved the district court's reversal of Boivin's conviction for aggravated battery.
In Carawan the court emphasized that its holding applied only where two or more offenses were predicated on a single underlying act, as opposed to a transaction consisting of a related series of acts. Here, the aggravated child abuse, aggravated battery and attempted murder charges were all specifically alleged and proven to be the result of a single act  the choking of the victim. Thus, under the authority of Boivin and Carawan, the defendant could not be convicted of all three crimes.
The state's only response is that section 775.021(4), Florida Statutes, as recently amended on July 1, 1988, now controls this issue and mandates affirmance of the convictions. However, this court in Meadows v. State, 534 So.2d 1233 (Fla. 4th DCA 1988), ruled that this statute should not be applied retroactively. See also Johnson v. State, 535 So.2d 651, 653 n. 3 (Fla. 3d DCA 1988); Heath v. State, 532 So.2d 9 (Fla. 1st DCA 1988).
In State v. Barton, 523 So.2d 152, 153 (Fla. 1988), the supreme court ruled that where a Carawan analysis is applied, the conviction of the highest sustainable crime should stand. Therefore, Rivera's conviction for attempted murder should stand, but the convictions for aggravated battery and aggravated child abuse must be reversed. Because the defendant must be resentenced, his claim of error in his sentence is rendered moot.

THE DEFENDANT'S STATEMENTS
Rivera contends that statements he made to the police were erroneously admitted into evidence at trial. To resolve this issue we must consider the underlying facts and circumstances considered by the trial court in denying Rivera's motion to suppress the statements. The record reflects that the victim, Jennifer Goetz, was on her way to summer day camp on July 10, 1985. She passed a man on a bench after walking down the stairs of her condominium complex in Coral Springs. As she walked toward a bus stop, she heard someone following her. She was grabbed around the neck and waist, picked up and put on the ground on her stomach. The man choked her. When she tried to kick him, he told her not to move or he would kill her. The man turned her over, and she saw his face. He put a tote bag over her head and she passed out. The approach of a maintenance man at the condominium scared the attacker away. No one was immediately identified or arrested as the assailant.
*143 Subsequently, Detectives Scheff and Amabile sought to question Rivera regarding an investigation of a case involving a young girl, Staci Jazvac, who had been kidnapped and murdered. The detectives arrested Rivera under outstanding warrants for his failure to appear in court on misdemeanor charges of lewd and lascivious acts. At that time, Scheff was not familiar with the Goetz case, although Amabile had hypnotized Jennifer to obtain a description of her assailant for a forensic artist. The detectives did not advise the defendant of his Miranda[1] rights at the time of his arrest and did not attempt to question him while transporting him to the police station. However, while enroute to the police station, Rivera spontaneously said that if he spoke to the detectives, he would spend the next twenty years in jail.
At the station, the defendant was read his Miranda rights and he agreed to talk to the police. The detectives then told Rivera that they wanted to talk to him about the Jazvac case. Rivera admitted that he had made some anonymous phone calls in which he took credit for abducting and murdering Staci Jazvac. However, he denied committing the crime. The police then asked him to take a lie detector test, and he agreed, stating that the test would vindicate him.
Detective Eastwood, who had no knowledge of the Goetz incident, then administered the lie detector examination. Eastwood did not re-advise Rivera of his Miranda rights at the start of the lie detector questioning. Subsequently, when the detective told Rivera that he was not doing well on the polygraph, Rivera stated that he remembered seeing a young girl pushing a bicycle, and that he had thought many times about abducting and sexually assaulting young girls. At this point Eastwood read Rivera his Miranda rights again, because he believed Rivera was making statements similar to the Jazvac incident. Rivera then signed a waiver of rights card indicating his willingness to talk and to waive the presence of counsel.
Eastwood continued the testing, and Rivera made statements which led Eastwood to comment that if the defendant hadn't abducted Staci Jazvac, he had done something very similar. Eastwood asked Rivera for an explanation as to why he was getting certain readings, and asked Rivera what he was thinking about during his answers. Rivera indicated he was thinking about several young girls he had indecently exposed himself to at about the same time Staci Jazvac disappeared. Eastwood asked Rivera if that was the reason he was holding back information, and Rivera said yes. Eastwood told him tha the "could care less" about the exposures, and that his assignment was Staci Jazvac. Eastwood told Rivera that he could not be charged with anything that the police had no specific complaint, location, time, or date on. Subsequently, Rivera began talking about exposures in Cypress Creek and Coral Springs. Rivera complained of how the exposures bothered him, but that he couldn't stop.
At this point, Eastwood advised Scheff and Amabile of what he had been told by Rivera, and Amabile recalled the Goetz incident. Scheff and Amabile then resumed questioning Rivera but did not re-advise him of his Miranda rights. Rivera was willing to talk with them, but did not wish to be taped. In his subsequent statement to the detectives Rivera confessed to committing the attack on Jennifer Goetz. Rivera's statement in the police car and his subsequent statements at the station were all admitted into evidence at trial over Rivera's objection, the trial court having denied Rivera's pretrial motion to suppress.

STATEMENTS IN THE POLICE CAR
Rivera intially contends that his statement in the police car that if he spoke to the police he would spend the next twenty years in jail, was inadmissible, as he was *144 in police custody at the time, and had not yet been advised of his Miranda rights. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held:
the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way ... Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
86 S.Ct. at 1612. (emphasis added) (footnote omitted). The procedural safeguards pertinent to the Miranda rule are required where a suspect is taken into custody, and subjected to interrogation. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). See also Spikes v. State, 405 So.2d 430 (Fla. 3d DCA 1981). The term interrogation refers not only to express questioning, but also to any words or actions on the part of the police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). See Lewis v. State, 509 So.2d 1236 (Fla. 4th DCA), rev. denied, 519 So.2d 987 (Fla. 1987). In this case it is undisputed that Rivera uttered the statement in the police car on the way to the station on his own accord, and without questioning or prompting by the police. Since Rivera, although in custody, was not subjected to any express or implied questioning, his gratuitous statement was properly held to be admissible.

STATEMENTS AT THE STATION
Rivera next contends that the admissions he made during interrogation by the police were involuntary, as they resulted from assurances from the detective administering the polygraph examination that the statements he made would not be used against him. When a confession is induced by a direct or implied promise of a benefit, the confession cannot stand. State v. Kettering, 483 So.2d 97 (Fla. 5th DCA), rev. denied, 494 So.2d 1153 (Fla. 1986); Puccio v. State, 440 So.2d 419 (Fla. 1st DCA 1983); Henthorne v. State, 409 So.2d 1081 (Fla.2d DCA 1982). Conversely, a defendant is not entitled to suppression of his statements to the police where it is determined that they were not made pursuant to threats, promises, or other improper influences. Thomas v. State, 456 So.2d 454 (Fla. 1984).
Here, Rivera relies on Detective Eastwood's statements that he was not concerned about the indecent exposures Rivera had made, that the police could not charge him without having specific information, and that his focus was on the Staci Jazvac case, as constituting promises that Rivera could freely talk about offenses other than Jazvac, including the case at hand. We do not believe the statements made to Rivera were such as to require the trial court to suppress Rivera's subsequent statements. Rather, we believe those statements, taken in context, could be properly construed by the trial court, along with the other circumstances surrounding the interrogation, as not constituting an improper assurrance to appellant that he could safely talk about the Goetz case without fear of prosecution.
First, since the only assurances of not being prosecuted that Rivera received concerned the alleged indecent exposures, we believe the trial court could reasonably conclude that the admissions regarding the physical attack on Jennifer Goetz were not covered by the detective's statement to Rivera. Clearly, the Jazvac case was not covered by the detective's statements. Similarly, the trial court could conclude that confessions to crimes not involving exposures would not be covered. The Goetz *145 case did not involve an indecent exposure. The statements by Eastwood also did not make any specific promise of immunity from prosecution. Indeed, it could be implied that the state could prosecute for offenses that Rivera provided the specifics for, but that generalized discussions of exposures was safe. Clearly the remarks were not made as a specific means of inducing the defendant's confession to the Goetz offense, as Detective Eastwood was not even aware of the Goetz incident at the time. Importantly, also, the confession to the Goetz crime also came after the appellant had again been warned about his Miranda rights and had waived them. These evaluations, absent a clear violation of the rule against threats or promises, were for the trial court to make. Under all these circumstances we see no error in the decision of the trial court finding that the confession was voluntary and not improperly induced by Eastwood's statements. Cf. La Rocca v. State, 401 So.2d 866 (Fla. 3d DCA 1981) (polygraph examiner's minimizing statements to effect that because defendant did not fire the first shot into victim, what he did was not "that big of a deal", did not constitute coerciveness or was not so psychologically effective as to break defendant's will and produce confession).[2]

MIRANDA WARNINGS
Rivera claims that he was entitled to be specifically re-advised of his Miranda rights before submitting to the polygraph examination. He cites as support for this proposition Turner v. State, 429 So.2d 318 (Fla. 1st DCA 1982), rev. denied, 440 So.2d 353 (Fla. 1983), where the court stated that any incriminating statements made by the defendant during a polygraph examination, in the absence of Miranda warnings, were inadmissible, as the defendant was then in custody on another offense. The court observed that the law was clear that even though the offense for which the defendant was restrained was different from that for which he was being interrogated, the defendant still needed to be told of his Miranda rights before questioning. Turner, 429 So.2d at 321. Here, unlike the defendant in Turner, Rivera was advised of his Miranda rights before he was interrogated. In addition, Rivera was again given his Miranda rights during the polygraph test, and he again waived those rights.
Rivera also contends that the fact that he was given Miranda warnings when he arrived at the police station and again during the polygraph test does not render his confession admissible, as those warnings only related to admissions as to the incident the police were concerned with  Staci Jazvac. However, in S.T.N. v. State, 484 So.2d 616 (Fla. 4th DCA 1986), where the defendant was arrested for larceny, advised of his Miranda rights, and began to talk about a different larceny, this court rejected the defendant's argument that the police were obligated to stop him and re-advise him of his Miranda rights as they pertained to the second larceny. Similarly, in Enriquez v. State, 449 So.2d 845 (Fla. 3d DCA), rev. denied, 459 So.2d 1040 (Fla. 1984), the court ruled that the testimony of the state's psychiatrist, who examined the defendant without informing him of his Miranda rights, was admissible, as prior to the interrogation by the police, the defendant had been advised of his Miranda rights and waived them. The court observed that the interrogation session, as here, commenced *146 and continued without a break and included the examination by the state's psychiatrist, to which the defendant agreed. The court determined that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), did not require that after an effective waiver, each individual questioning the defendant during a single continuing session of interrogation had to re-advise the defendant of his rights. We believe the record contains evidence to support the trial court's determination that the defendant was properly advised of his rights before being interrogated.

FAILURE TO CONSULT COUNSEL
Rivera contends that his admissions should have been suppressed because he was questioned without any attempt being made to contact counsel appointed to represent him on the misdemeanor charges for which he was arrested. In Parham v. State, 522 So.2d 991 (Fla. 3d DCA 1988), the defendant was questioned by a Metro-Dade detective about a robbery that had occurred. The defendant was in the Dade County Jail at that time on unrelated matters. The defendant signed a Miranda waiver form and confessed to the robbery. On appeal, the court determined that the defendant's confession was not rendered involuntary by the state's failure to notify the public defender appointed to represent the defendant in the earlier matter prior to questioning him about the robbery. The court noted that the defendant was not represented by counsel in the robbery case because he had not yet been charged, and thus did not have a Sixth Amendment right to counsel in connection with that case. The court observed that the defendant had been informed of and waived his Miranda rights.
Here, as in Parham, Rivera was in custody on charges unrelated to the incident the detectives were investigating. Rivera had not been charged in connection with the Jazvac case. He also does not dispute that he twice waived his right to an attorney when he was questioned. Thus, under Parham, the state's failure to notify the public defender representing the defendant on the misdemeanor charges before questioning him about the Jazvac incident did not render his confession involuntary. See also Lofton v. State, 471 So.2d 665 (Fla. 5th DCA), rev. denied, 480 So.2d 1294 (Fla. 1985) (defendant's incriminating statement made to state investigator while defendant was being held in county jail on a unrelated burglary charge was not rendered involuntary because the public defender representing defendant in the burglary matter was not notified prior to questioning regarding sexual battery investigation).

ADEQUACY OF HEARING
Rivera finally claims that the trial court failed to grant him a full hearing on his motion to suppress. At the suppression hearing the state accepted the burden of proving the voluntariness and legality of the appellant's statements. After the state rested, the defense offered no evidence and instead proceeded to argue the merits of the motion to suppress. When the lawyers finished their arguments, the trial court denied the motion. The defense attorney then stated that "I may have some people I want to put on," but the court stated that the defense had been given "ample opportunity" to present any testimony in regard to the motion to suppress.
Rivera now contends that the trial court's refusal to allow him to present additional evidence deprived him of a fair hearing. However, he concedes that he never advised the court of additional specific evidence that he wanted to present, and he did not suggest at the subsequent trial that there was other evidence the trial court should consider before admitting the statements. A party who is excluded from presenting testimony must make a proffer of the proposed testimony so that the trial and appellate courts may evaluate its weight, relevance, and competency in determining the effect of its exclusion. Nava v. State, 450 So.2d 606 (Fla. 4th DCA 1984), dismissed, 508 So.2d 14 (Fla. 1987). Here the defendant not only did not seek to make a proffer of any testimony, but only suggested at the end of the hearing after an adverse ruling that he might have some *147 testimony to present. The court found that the defense had simply chosen not to go forward. In light of the defendant's failure to present testimony or make a proffer of such testimony, either at the hearing or the trial, we find no error by the trial court in conducting the hearing.
In accordance with the above we affirm Rivera's convictions for attempted murder and kidnapping, reverse his convictions for aggravated battery and child abuse, and remand for resentencing in accord herewith.
HERSEY, C.J., and FRANK, RICHARD, Associate Judge, concur.
NOTES
[1] In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Supreme Court held that the Fifth Amendment requires that a person taken into police custody must, before any questioning, be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, retained or appointed.
[2] We do not believe the circumstances here present a situation similar to those involved in the cases cited by Rivera, where pressure was specifically exerted on the suspect to obtain an admission. See, e.g., Wright v. State, 478 So.2d 825 (Fla. 5th DCA 1985), rev. denied, 486 So.2d 598 (Fla. 1986) (admissions by defendant attending mandatory driving class were not admissible, and could not be used in trial for manslaughter and leaving the scene of an accident, as teacher of class, who was an assistant state attorney, was guilty of overreaching in urging defendant to bare her soul); Fullard v. State, 352 So.2d 1271 (Fla. 1st DCA 1977) (defendant's confession of theft of lawn mower to detectives investigating the theft inadmissible where detective stated that "if I get the lawn mower back there won't be any problem"; statement implied that if defendant confessed, he would not be charged); Henthorne v. State, 409 So.2d 1081 (Fla. 2d DCA 1982) (defendant's confession involuntary where interrogating officer promised defendant that if he disclosed identity of coperpetrator, he would not be charged with two other armed robberies the officer believed defendant was involved in).