WALLACE, Judge.
Robert E. Conner was found guilty by a jury of attempted first-degree murder, §§ 777.04(1), 782.04(l)(a), Fla. Stat. (1997), and kidnapping, § 787.01, Fla. Stat. (1997). The trial court adjudged him to be guilty of both crimes and sentenced him to serve twenty-five years in prison on the attempted murder charge and life in prison on the kidnapping charge. The sentences were designated to run consecutively.[1]
On appeal, Mr. Conner challenges only his conviction for kidnapping. He raises three issues. First, he argues that the trial court should have granted his motion for a judgment of acquittal on the kidnapping charge because the confinement that constituted the kidnapping was merely incidental to the attempted murder, was inherent in the nature of the attempted murder, and had no significance independent of the attempted murder. Mr. Conner’s second argument overlaps his first one. He contends that the trial court erred in refusing to instruct the jury concerning the principle established in Faison v. State, 426 So.2d 963 (Fla.1983). Finally, Mr. Conner claims that the trial court erred in admitting certain collateral act evidence.
We find no merit in Mr. Conner’s third point concerning the collateral act evidence and decline to address that issue. We agree with Mr. Conner that the evidence was insufficient to prove the kidnapping *1119 charge. However, we conclude that the evidence was sufficient to prove the lesser included offense of false imprisonment. Although we conclude that Mr. Conner was not entitled to a jury instruction based on the Faison case, our holding on the first point makes the jury instruction issue moot.
I. THE FACTS
Mr. Conner was identified as the perpetrator of an attack on a thirteen-year-old girl who was sitting alone at her school bus stop early in the morning. The date of the attack was February 16, 1999. While the victim was waiting for her bus to arrive, she saw a van that had previously passed her return and stop about fifteen feet from the bus stop. The victim testified about what happened next as follows:
The van stopped and I looked over and I saw him open the door and jump out. And I stood up and there was a stocking over his face. And I tried to run and I only got a few feet and he pushed me down.... And he pushed me down onto my stomach and I hit my head ... on the ground next to the road. And he put a stocking around my neck, and he strangled me.
The victim added that her assailant choked her with the stocking so that she was unable to breathe for at least five to six seconds. After a brief period of time,[2] the sound of an approaching vehicle with a noisy muffler apparently startled the attacker. He jumped up abruptly, fled to his van while laughing, and drove away.
The van driven by the victim’s attacker was seen in the vicinity of schools located relatively near the bus stop both before and after the incident. Information provided by the victim, two other students, and a security officer led to the identification of Mr. Conner as the assailant. After he was arrested and given the Miranda[3] warnings, Mr. Conner ultimately admitted that he had perpetrated the attack on the victim.
II. DISCUSSION

A. Faison and its Antecedents

Mr. Conner argues that his motion for judgment of acquittal on the kidnapping count should have been granted because any confinement that may have occurred during the attack was slight, inconsequential, and merely incidental to the act of attempted murder. This argument overlaps his assertion that the trial court should have granted his requested jury instruction based on Faison.
The supreme court’s decision in Faison was based, in part, on Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980). Har-kins was convicted in a jury trial of murder, kidnapping, and sexual battery. Id. at 525. In his appeal, Harkins argued that any detention of his victim was merely incidental to his other criminal acts. Id. at 527. The Fifth District compared Florida’s kidnapping statute[4] to a similar Kan *1120 sas statute and found the decision in State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976), persuasive. Harkins, 380 So.2d at 528. In Buggs, the Supreme Court of Kansas stated the following test for determining if conduct qualifies as kidnapping under the Kansas counterpart of subsection 787.01(l)(a)(2):
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.
Buggs, 547 P.2d at 731 (emphasis added). Applying the Buggs test to subsection 787.01(l)(a)(2) (“[c]ommit or facilitate commission of any felony”), the Harkins court concluded:
[W]e do not believe that the Florida Legislature intended to convert every first degree robbery and every forcible rape into two life felonies. Therefore, we construe section 787.01, Florida Statutes, to mean that “confining, abducting, or imprisoning another person ... with intent to commit or facilitate commission of any felony” does not include movement or confinement that is inconsequential or inherent in the nature of the felony.
Harkins, 380 So.2d at 528 (second alteration in original). Based on the facts of the case before it, the Fifth District concluded that the act of tying the victim to a motel bed with ropes prior to sexually assaulting and stabbing the victim to death were “neither inconsequential nor inherent in the felonies of sexual battery and second degree murder,”[5] id., and affirmed Har-kins’ kidnapping convictions.
Two years after Harkins, in Mobley v. State, 409 So.2d 1031, 1034 (Fla.1982), the Supreme Court of Florida considered whether the confinement of guards and a visiting lawyer by several prisoners during an unsuccessful attempt to escape from a jail qualified as the separate offense of kidnapping. Noting that “[i]f construed literally this subsection would apply to any criminal transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery,” id., the Mobley court conducted a comparative analysis of Florida cases (including Harkins) and cases and statutes of other jurisdictions and adopted the prevailing view that the court should “closely exam-inee ] the facts to determine whether the *1121 confinement or movement was incidental to the escape or whether it took on an independent significance justifying a kidnapping conviction,” id. at 1034-35. Applying this approach to the facts in that case, the supreme court concluded that although the initial confinement of the victims may have been incidental to the attempted escape,
[tjhis confinement was not incidental to the attempted escape once they began using them as hostages and threatening physical harm. Although appellants were not charged with confining the victims with the intent of using them as hostages, evidence that they did use them as hostages is relevant and sufficient proof that the kidnappings were not incidental to the attempted escape. The evidence shows that the confinement of the victims was significantly independent of the crime of escape and that it substantially increased the risk of harm to the victims.
Id. at 1037.
Shortly after Mobley was decided, the supreme court considered Faison. Faison was convicted of two counts of kidnapping, two counts of sexual battery, and one count of first-degree burglary arising from two separate attacks on two women occurring on the same day. Faison, 426 So.2d at 964. On the kidnapping counts, Faison was convicted under section 787.01(l)(a)(2) (intent to commit or facilitate commission of any felony). Id. at 965. On Faison’s direct appeal, the Third District affirmed his judgments and sentences for both kidnappings but reversed one of the sexual battery convictions. Faison v. State, 399 So.2d 19 (Fla. 3d DCA 1981). Both the State and Faison sought review of the Third District’s decision in the Supreme Court of Florida.
On review by certiorari in the supreme court, Faison argued that his kidnapping convictions should be reversed because “the victims’ detention and confinement were merely incidental to and were not materially different from the detention necessarily involved in the course of the sexual batteries.” Faison, 426 So.2d at 965. In its review of the case, the Florida Supreme Court approved the Buggs formulation that the Fifth District had adopted in Harkins. Id. at 966. Applying the Buggs test, the supreme court concluded that Faison’s attacks on his two victims were not “slight, inconsequential or merely incidental to the sexual batteries”; that the movements were not inherent or necessary in the commission of the other crimes; and that by moving the victims, the sexual batteries were easier to commit and the danger of detection was reduced. Id. As a result, the supreme court concluded that the acts leading to the kidnapping charges satisfied the three parts of the test described in Buggs. Id.

B. The Inapplicability of the Faison Test to Subsection (l)(a)(3).

Unlike Faison, Mr. Conner was charged under section 787.01(l)(a)(3), i.e., that he forcibly, secretly, or by threat confined, abducted, or imprisoned another person against her will with intent to “[i]n-flict bodily harm upon or to terrorize the victim or another person.” In the Faison case, the issue before the supreme court was whether the confinement had been perpetrated to facilitate the commission of another crime under subsection 787.01(l)(a)(2). The difference is significant because, as the supreme court later noted in Bedford v. State, 589 So.2d 245, 251 (Fla.1991), the Faison test does not apply when the defendant is charged under section 787.01(l)(a)(3):
We also find no merit to Bedford’s contention that a conviction for kidnapping cannot be sustained because any *1122 confinement was “merely incidental” to the homicide. Bedford was charged with confining, abducting, or imprisoning Herdmann with the intent to “[ijn-flict bodily harm upon or to terrorize” Herdmann, under section 787.01(l)(a), (3), rather than with the intent to “[c]ommit or facilitate commission of any felony,” under subsection 787.01(l)(a), (2). Our decision in Faison v. State, 426 So.2d 963 (Fla.1983), which held that the latter subsection does not apply to unlawful confinements or movements that were merely incidental to or inherent in the nature of the underlying felony, has no application here.
See also State v. Lumarque, 990 So.2d 1241, 1242 (Fla. 3d DCA 2008) (“Faison may correctly be applied to section 787.01(l)(a)(2), ... but it is not applicable to a kidnapping charge based upon section 787.01(l)(a)(3)-”); Sutton v. State, 834 So.2d 332, 334 (Fla. 5th DCA 2003) (“The standard adopted in Faison does not apply to offenses charged under section 787.01(l)(a)[ (]3[) ].”); Biggs v. State, 745 So.2d 1051, 1052 (Fla. 3d DCA 1999) (“The Faison test applies only to subparagraph 2: confining, abducting, or imprisoning someone with intent to ‘[cjommit or facilitate commission of any felony.’ It does not apply where the charge is confining, abducting or imprisoning with intent to ‘[ijnflict bodily harm upon or terrorize the victim or another person.’ ” (alterations in original) (citation omitted)); Waddell v. State, 696 So.2d 1229, 1229-30 (Fla. 3d DCA 1997) (“Where, as here, there was evidence to sustain a conviction for kidnapping with the intent to ‘[ijnflict bodily harm upon or to terrorize the victim’ under section 787.01(l)(a)(3), the Faison test has no applicability.” (alteration in original)).
If Mr. Conner had been charged under subsection (l)(a)(2), we would not hesitate to find that the “confinement” in this ease (if any) was slight, inconsequential, and merely incidental to the act resulting in the attempted-murder charge. However, the State did not charge Mr. Conner under subsection (l)(a)(2). Because the case law requires that the defendant be charged under subsection (l)(a)(2) for the Faison test and instruction to apply, we are bound to conclude that the trial court did not err in refusing to grant Conner’s request for a Faison instruction.
Because the Faison test and its corresponding instruction are not applicable when the defendant is charged under subsection (l)(a)(3) of the statute, the question arises whether the State may convert any murder, robbery, sexual battery, or other crime involving an assault on another person into two separate crimes by charging the defendant under subsection (l)(a)(3) instead of (l)(a)(2), even if the facts demonstrate that the alleged “confinement” was subsumed in the other criminal act. Surely a person who commits a sexual battery, for example, has the requisite intent under subsection (l)(a)(3) both to “inflict bodily harm” and to “terrorize the victim.” But such an expansive reading of subsection 787.01(l)(a)(3) would lead to the very result that the Fifth District noted could not possibly have been the intent of the legislature, and one which would perpetuate the problem the Harkins court sought to avoid — that any first-degree robbery or forcible sexual battery could be converted into two life felonies. To explore this problem further, we must focus our attention on the overt acts which form the basis of a kidnapping offense (the actus reus) instead of the requisite intent underlying those acts (the mens rea).

C. Searching for the Meaning of “Con-ñning”

“[Tjhe ‘gist of the offense’ [of kidnapping under section 787.01j is the feloni *1123 ous act of a confinement or abduction with a specific intent.” Crain v. State, 894 So.2d 59, 69 (Fla.2004) (quoting Keith v. State, 120 Fla. 847, 163 So. 136, 138-39 (1935)). Thus the first step in determining if particular conduct constitutes a kidnapping is to determine “whether the facts show conduct that can reasonably be described as ‘confining, abducting or imprisoning.’ ” Berry v. State, 652 So.2d 836, 838 (Fla. 4th DCA 1994), approved, 668 So.2d 967 (Fla.1996). Unfortunately, the statute does not define these critical terms. Adding to the uncertainty, judicial opinions on kidnapping tend to avoid the definitional problem and focus instead on the specific facts of the case before the court.[6]
In approaching the facts of this case, we think it is safe to say that Mr. Conner did not abduct or imprison his young victim. Thus we must determine whether Mr. Conner’s conduct constituted a “confining” of the victim. The “common and ordinary” definition[7] of the word “confine” (as a verb) is, “1. To keep within bounds; restrict: Please confine your remarks to the issues at hand. ... 2. To shut or keep in, especially to imprison. 3. To restrict in movement: The sick child was confined to bed.” The American Heritage Dictionary of the English Language 386 (4th ed. 2000). Black’s Law Dictionary defines “confinement” as “[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained.” Black’s Law Dictionary 318 (8th ed. 2004). These definitions are of limited value to our search for clarification, however, because they provide synonyms as definitions that are not necessarily consistent with the way the kidnapping statute has been interpreted by the Florida courts. For example, the word “restrain” has been interpreted as implying a lesser degree of restriction of personal movement than “confine.” In Gray v. State, 939 So.2d 1095 (Fla. 1st DCA 2006), the court noted:
“False imprisonment” is defined as “forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will.” § 787.02(l)(a), Fla. Stat. (2004) (emphasis added). In contrast, “kidnapping” is defined as “forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his or her will and without lawful authority,” with specific intent to commit another offense. § 787.01(l)(a), Fla. Stat. (2004). Merely “restraining” one’s victim is not included in the definition of kidnapping.
Id. at 1097 (holding that the act of dragging a victim by her hair around a store and forcing her to disrobe was insufficient to support a conviction for kidnapping but constituted an act of sufficient restraint to support a conviction for the lesser included offense of false imprisonment) (emphasis added). We also note that the word “imprisonment,” as used in the false imprisonment statute, section 787.02(1), has long since lost any resemblance to the common and ordinary definition of the word. The American Heritage Dictionary defines “imprison” as “to put in or as if in prison; confine.” The American Heritage Dictio *1124 nary at 882. Black’s Law Dictionary defines “imprisonment,” in pertinent part, as “[t]he act of confining a person, esp. in prison.” Black’s Law Dictionary at 773. Black’s Law Dictionary further defines the crime of false imprisonment as “a restraint of a person in a bounded area without justification or consent.” Id. at 636. However, Florida courts have expanded the meaning even further, with the result that the crime of false imprisonment may be completed by the simple momentary grasping of another person. See Proko v. State, 566 So.2d 918 (Fla. 5th DCA 1990) (holding that the act of grasping of a victim’s arm resulting in a brief “tug-of-war” between the victim and the perpetrator was sufficient to uphold a conviction for false imprisonment).
Turning to Florida case law, we do find a few cases that provide some guidance concerning the use of the word “confining” in the kidnapping statute. Generally, the act of binding the victim is sufficient to constitute a “confinement.” See Berry v. State, 668 So.2d 967, 969 (Fla.1996), aff'g Berry, 652 So.2d 836; Henderson v. State, 778 So.2d 1046, 1048 (Fla. 1st DCA 2001). Holding a carjacking victim down in her own car while travelling 200 yards before forcibly ejecting the victim from the vehicle is also a “confinement,” Cathcart v. State, 643 So.2d 702, 703 (Fla. 4th DCA 1994), as is the removal of a child from a location near her home to a place or places unknown for a period of at least four hours without the knowledge or consent of the child’s parents, Miller v. State, 233 So.2d 448, 450 (Fla. 1st DCA 1970). However, holding a victim in a headlock in order to shoot the victim is not a “confinement.” Mackerley v. State, 754 So.2d 132, 137 (Fla. 4th DCA 2000), quashed on other grounds, 111 So.2d 969 (Fla.2001).
We may also shed some light on the meaning of “confining” in the context of the specific charge against Mr. Conner by examining the decisions that have found the evidence sufficient to support a conviction for kidnapping under subsection (l)(a)(3). The facts in these cases have generally involved the movement of the victim within a structure and the holding of the victim in a particular room or rooms within the structure,[8] the holding of the victim in a moving vehicle,[9] or the binding of the victim.[10]
III. ANALYSIS
 The entire criminal episode under review in this case lasted less than a minute. During this brief period of time, the victim’s freedom of movement was restricted only because she was pushed to the ground from behind and choked for a few seconds. Thus the restraint of the victim was momentary, it occurred adjacent to a public street in full view of any persons passing by, and it did not involve any element of movement. Moreover, neither the victim’s hands nor her feet were bound.
In considering whether conduct involving another crime also amounts to a kidnapping, our supreme court teaches that one must “closely examine[ ] the facts to determine whether the confinement or movement was incidental to the [other charged crime] or whether it took on an independent significance justifying a kid *1125 napping conviction.” Mobley, 409 So.2d at 1035. We believe this fundamental principle applies whether the State charges the defendant under subsection (l)(a)(2) or subsection (l)(a)(3). See id. at 1034-35. Here, Mr. Conner’s brief act of holding his unfortunate victim on the ground had no significance independent of the attempted murder, was merely incidental to the choking, and amounted to a mere momentary restraint, insufficient to support a conviction for kidnapping. See Gray, 939 So.2d at 1097. In Buggs, the Supreme Court of Kansas referred to a “standstill robbery on the street” as an example of a criminal act that did not constitute a kidnapping. 547 P.2d at 731. Here, we have a “standstill” attempted murder. Although Mr. Conner undoubtedly terrorized the young victim of his attack, we conclude that his acts were insufficient to constitute the confinement, abduction, or imprisonment necessary to establish kidnapping. See Mackerley, 754 So.2d at 137.
In reaching this conclusion, we have not overlooked the decision in Rivera v. State, 547 So.2d 140 (Fla. 4th DCA 1989), a case involving a remarkably similar attack on a girl who was walking to her bus stop. Like Mr. Conner, Rivera was convicted of attempted murder in the first-degree and kidnapping. Id. at 142. Rivera was also convicted of aggravated child abuse and aggravated battery. Id. On appeal, the Fourth District reversed Rivera’s convictions for aggravated child abuse and aggravated battery but affirmed his convictions for attempted murder and kidnapping. Id. at 147. However, Rivera does not address the question before us in this case because the Rivera court did not discuss the sufficiency of the evidence to support the defendant’s kidnapping conviction.
IV. CONCLUSION
For the reasons stated above, we reverse Mr. Conner’s judgment and sentence for kidnapping. Although the evidence was insufficient to prove kidnapping, Mr. Conner’s act of restraining his victim during the attack was sufficient to constitute the lesser included offense of false imprisonment. See § 787.02; see also Gray, 939 So.2d at 1097. Accordingly, we remand this case to the trial court with directions to adjudicate Mr. Conner guilty of false imprisonment and to sentence him for that offense. We affirm Mr. Conner’s judgment and sentence for attempted first-degree murder.
Affirmed in part, reversed in part, and remanded with directions.
DAVIS, J., Concurs.
SILBERMAN, J., Concurs with opinion.

. Mr. Conner was originally convicted of attempted first-degree murder and kidnapping in 2000. On appeal, this court affirmed both convictions. Conner v. State, 803 So.2d 723 (Fla. 2d DCA 2001) (table decision). Afterward, the trial court granted Mr. Conner's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. The State appealed the order for postconviction relief, and this court affirmed the order. State v. Conner, 962 So.2d 912 (Fla. 2d DCA 2007) (table decision). Mr. Conner's current convictions stem from his second trial, which was held in November 2007.

. At Mr. Conner's second trial, held eight and one-half years after the incident, the victim testified that she was "really not sure how long the whole thing took." When asked at the first trial how long the incident lasted, the victim testified, "About — at the most fifteen, twenty seconds.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.Section 787.01(l)(a) provides:
The term "kidnapping” means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
*1120 3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.

.Although the Fifth District’s analysis in Harkins is specific to section 787.01(l)(a)(2), the court's opinion does not state whether Har-kins was actually charged under any particular subsection of 787.01(l)(a).

. For discussion of the problem of defining the crime of kidnapping, see generally, John L. Diamond, Kidnapping: A Modem Definition, 13 Am. J. Crim. L. 1 (1985); Richard Sanders, “Double Offense” Problems in Kidnapping and False Imprisonment Cases, 77 Fla. B J. 10 (2003).

. See Barco v. Sch. Bd., 975 So.2d 1116, 1122 (Fla.2008) ("It is appropriate to refer to dictionary definitions when construing statutes or rules.”); Green v. State, 604 So.2d 471, 473 (Fla. 1992) ("If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.”).

. See, e.g., Johnson v. State, 969 So.2d 938, 955-56 (Fla.2007); Lumarque, 990 So.2d at 1242; Lee v. State, 770 So.2d 231, 231-32 (Fla. 3d DCA 2000); Biggs, 745 So.2d at 1052-53.

. See, e.g., Boyd v. State, 910 So.2d 167, 185 (Fla.2005); Evans v. State, 838 So.2d 1090, 1096 (Fla.2002); Bedford, 589 So.2d at 251.

. See, e.g., Conahan v. State, 844 So.2d 629, 636-37 (Fla.2003); Sutton, 834 So.2d at 334-35; Harkins, 380 So.2d at 528.